## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| POSCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 24-00006 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COMPLAINT

Plaintiff POSCO ("POSCO") by and through counsel, alleges herein as follows:

### JURISDICTION

1.      POSCO brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the countervailing duty ("CVD") order on certain carbon and alloy steel cut-to-length plate ("CTL plate") from the Republic of Korea ("Korea"), Case No. C-580-888, issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). *See Certain Carbon and Alloy Steel Cut-to-Length Plate From the Republic of Korea:  Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 86,318 (Dep't Commerce Dec. 13, 2023) ("*Final Results*") and accompanying Issues and Decision Mem. ("I&D Mem.").

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

### PARTIES AND STANDING

3.      POSCO is a producer and exporter of CTL plate from the Republic of Korea.

1

4.      POSCO was a party to the underlying administrative proceeding that led to the determination that is being challenged herein, as POSCO was selected by Commerce as the sole mandatory respondent, responded to all of Commerce's questionnaires during the course of the proceeding, and submitted a case brief to Commerce.  Therefore, POSCO is an "interested party" pursuant to 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A).  As an "interested party" that actively participated in the proceeding below, POSCO has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

## TIMELINESS OF THIS ACTION

5.      On December 13, 2023 Commerce published in the *Federal Register* the *Final Results*.  *See Final Results*, 88 Fed. Reg. 86,318.  POSCO timely filed a Summons on January 9, 2024, within thirty days of the publication of the *Final Results* in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and U.S. Court of International Trade Rules 3(a)(2) and 6(a).  Within thirty days after filing the January 9, 2024 Summons, POSCO timely files this complaint.

## STATEMENT OF FACTS

6.      On July 14, 2022, Commerce initiated an administrative review of the CVD order on CTL plate from Korea for the 2021 period of review ("POR").  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 42,144, 42,151-52 (Dep't Commerce July 14, 2022).  Commerce selected POSCO as the sole mandatory respondent in this administrative review and, on August 3, 2022, issued initial questionnaires to the Government of Korea ("GOK") and POSCO.  *See* Mem. from Faris Montgomery, International Trade Compliance Analyst, Office VIII to Irene Darzenta Tzafolias, Director, Office VIII, "Countervailing Duty Administrative Review of Certain Carbon and Alloy Steel Cut-to-Length

Plate from the Republic of Korea, 2021: Respondent Selection" (Aug. 1, 2022); Letter from

Katie Marksberry, Program Manager, AD/CVD Operations, Office VIII, "Administrative

Review of Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea,

2021: Countervailing Duty Questionnaire" (Aug. 3, 2022) ("Initial Questionnaire").  On October

7, 2022, POSCO submitted its initial questionnaire response ("POSCO IQR"), Letter to Sec'y

Commerce from Morris, Manning & Martin, LLP, "Certain Carbon and Alloy Steel Cut-to-

Length Plate from the Republic of Korea, Case No. C-580-888: POSCO's Initial Questionnaire

Resp." (Oct. 7, 2022) ("POSCO IQR"), and on October 11, 2022, the GOK submitted its initial

questionnaire ("GOK IQR"), Letter to Sec'y Commerce from Lee & Ko LLC and Morris,

Manning & Martin, LLP, "Certain Carbon and Alloy Steel Cut-to-Length Plate from the

Republic of Korea, Case No. C-580-888: GOK's Initial Questionnaire Resp." (Oct. 11, 2022)

("GOK IQR").

   7. Of relevance in this appeal, two of the programs being reviewed by Commerce

were (1) the provision of electricity for less than adequate remuneration ("LTAR"), *see* Initial

Questionnaire at II-9–II-15, and (2) the provision of Korea Emissions Trading System ("K-

ETS") permits, *id*. at II-5–II-8.

   8. With respect to the provision of electricity for LTAR program, Commerce had

reviewed the program in previous reviews and established a methodology for analyzing whether

the provision of electricity provided a countervailable benefit.  *See, e.g., Certain Carbon and*

*Alloy Steel Cut-to-Length Plate from the Republic of Korea: Final Results of Countervailing*

*Duty Administrative Review; 2020*, 87 Fed. Reg. 74, 597 (Dep't Commerce Dec. 6, 2022), and

accompanying Issues and Decision Mem. ("CTL Plate 2020 I&D Mem.") at 21-27.  Under this

benefit methodology pursuant to 19 C.F.R. § 351.511(a)(2)(iii), Commerce requires information

on whether the government price is consistent with market principles, including the government's price-setting philosophy, whether the price charged is sufficient to recover costs with a rate of return sufficient to ensure future operations, or whether there is discrimination among various types of users. *See* CTL Plate 2020 I&D Mem. at 21.

9.      In order to evaluate whether the electricity for LTAR program was specific, Commerce requested that the GOK provide information and data regarding the industries that consumed electricity, including industrial electricity, in Korea. Initial Questionnaire at II-13. This information is relevant to the analysis of whether any industry or enterprise received a "disproportionate" amount of the benefit from the electricity for LTAR program such that the program could be considered *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(III).

10.      In its response to the Initial Questionnaire, the GOK provided the requested data for Commerce's *de facto* specificity analysis. GOK IQR at 54-55. Of relevance to this appeal, the GOK reported the amount of electricity provided to the steel industry and to the largest 10 industries consuming electricity during the review period. *Id.* This data was treated as confidential.

11.      With respect to the K-ETS program, in its response to the Initial Questionnaire, POSCO explained that companies that emit a certain volume of carbon dioxide or equivalents are subjected to the K-ETS and allocated certain carbon emissions permits that represent an emissions limit the GOK imposes on each company. *See* POSCO IQR at Ex. E-1 p. 1. Pursuant to the K-ETS, the GOK determines the amount of emissions permits applicable to each entity, and allocates a portion of each entity's permits to the entity. GOK IQR at Ex. CEP-1 Article 12(3). Entities that meet certain production cost and international trade exposure, or "intensity," criteria are allocated one-hundred percent of the applicable permits. *Id.* at Ex. CEP-1 Article

4

12(4).  For entities that do not meet the production cost or trade intensity criteria, the GOK

applies a ratio to the entity's applicable permit amount and thereby reduces the amount of

permits allocated to them.  *Id*. at Ex. CEP-1 Article 12(3).  During the POR, the ratio allocated to

entities that do not meet the production cost or trade intensity criteria is ninety percent of the

entity's applicable emissions allocation.  *See* POSCO IQR at Ex. E-1 p. 2.  Entities who exceed

the annual emissions cap allocated to it must either purchase additional emissions permits or be

subjected to fines.  *See id*. at 15.  POSCO explained that it met the production cost and trade

intensity criteria and was allocated 100 percent of its applicable emissions permits, whereas other

industries had their allocation amounts reduced by the ninety percent ratio applicable during the

POR.  *Id*. at Exhibit E-1 p.2.  POSCO also explained its actual emissions exceeded its allocated

permits and it was required to purchase additional permits from private parties at significant

expense.  *See id*. at 36, Ex. E-3.

12.  On June 6, 2023, Commerce issued its *Preliminary Results*.  *See Certain Carbon

*and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Preliminary Results and Partial*

*Rescission of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 37019 (Dep't

Commerce June 6, 2023) ("*Preliminary Results*"), and accompanying Decision Mem. ("PDM").

With respect to the provision of K-ETS permits, Commerce determined that the GOK was

providing POSCO with a financial contribution in the form of revenue foregone by allocating it

one-hundred percent of its applicable K-ETS permits.  PDM at 25.  Commerce found that the

program provided a benefit under 19 C.F.R. § 351.503(b)(2) as POSCO was "relieved of the

obligation to purchase additional allowances" that the GOK required of other entities subject to

the K-ETS.  *Id*.  Commerce also determined that the program was *de jure* specific because

companies that meet the trade intensity or production cost criteria automatically qualify for an

addition ten percent allocation of K-ETS permits. *Id.* With respect to the provision of electricity for LTAR program, Commerce did not make a preliminary determination, explaining that it required more information. *Id.* at 32–33.

13. On August 9, 2023, Commerce issued a post-preliminary analysis memorandum, addressing the GOK's provision of electricity for LTAR. *See* Mem. to Lisa W. Wang, Assistant Secretary for Enforcement and Compliance from James Maeder, "Post-Preliminary Analysis of the Countervailing Duty Administrative Review of Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea; 2021 (Aug. 9, 2023). In this memorandum, Commerce preliminarily determined that the GOK was providing a countervailable benefit to POSCO in the form of the provision of electricity for LTAR. *Id.* at 11. Commerce determined that the GOK was providing a benefit to POSCO because, during the POR, certain of its industrial tariff rates did not recover costs (inclusive of a rate of return). *Id.* Commerce also determined that the provision of electricity was *de facto* specific under 19 U.S.C. §1677(5A)(D)(iii)(III) because the steel industry and three other industries combined consumed a disproportionately large amount of electricity in Korea. *Id.*

14. POSCO submitted a case brief to Commerce on October 16, 2023. *See* Letter to Sec'y Commerce from Morris, Manning & Martin, LLP, "Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, Case No. C-580-888: POSCO Case Br." (Oct. 16, 2023). In its case brief, POSCO argued that the K-ETS Program is not countervailable because it does not provide a benefit to POSCO, does not provide a financial contribution because there is no revenue foregone, and is not specific. *See id.* at 5-18. POSCO also argued that the electricity for LTAR program was not countervailable because it is not specific. *Id.* at 19–22.

15.     For the *Final Results*, Commerce continued to determine that the GOK provided a countervailable benefit to POSCO through the provision of electricity for LTAR and the provision of K-ETS permits.  Addressing POSCO's argument regarding specificity, Commerce found that the GOK's provision of electricity for LTAR was *de facto* specific in accordance with 19 U.S.C. § 1677(5A)(D)(iii)(III) because the steel industry receives a disproportionate amount of the subsidy.  I&D Mem. at 24–26.  To support its *de facto* specificity determination, Commerce relied on usage data provided by the GOK for the steel industry and the top ten largest electricity consuming industries that reflected their consumption as a proportion of the total amount of electricity consumed in Korea and within the industrial classification.  *See id*. at 25-26.  The GOK data were proprietary, but Commerce found that they demonstrated that the steel industry and two other industries combined, consumed a disproportionately large amount of electricity in Korea.  *Id*.  Commerce found this sufficient to support a disproportionality specificity determination under 19 U.S.C. § 1677(5A)(D)(iii)(III).  *See id*. at 26.

16.     With respect to the K-ETS program, Commerce found that the GOK's allocation of additional permits provided a financial contribution in the form of revenue foregone, pursuant to 19 U.S.C. 1677(5)(D)(ii) because the GOK allocated to POSCO one-hundred percent of its carbon emission permits but allocated only 90-percent to entities who did not meet the production cost or trade intensity criteria.  *Id*. at 34.  Commerce also found that the provision of carbon emission permits to be *de jure* specific on the grounds that criteria under the K-ETS program establish that some industries may receive the additional credits while others do not, rejecting POSCO's argument that the program does not expressly limit access to the 100 percent allocation of permits to particular industries or enterprises.  *See id*. at 45–47.

17.     Thus, in the *Final Results*, Commerce calculated an *ad valorem* subsidy rate of 0.61 percent for the provision of K-ETS permits and 0.07 percent for the provision of electricity for LTAR.  I&D Mem. at 10.  In total, Commerce calculated an *ad valorem* subsidy rate of 0.87 percent for POSCO.  *Final Results,* 88 Fed. Reg. at 86,319.

18.     This appeal followed.

## STATEMENT OF CLAIMS

### Count One

19.     Paragraphs 1 to 18 are incorporated by reference.

20.     Commerce's determination that the GOK's provision of electricity for LTAR to POSCO was *de facto* specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(III) is unsupported by substantial evidence and is otherwise not in accordance with law.

### Count Two

21.     Paragraphs 1 to 20 are incorporated by reference.

22.      Commerce's determination that the GOK's allocation of carbon emission permits to POSCO constitutes a countervailable subsidy is unsupported by substantial evidence and is otherwise not in accordance with law.

## **DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, POSCO respectfully requests that this Court:

a.      Hold that Commerce's *Final Results* are not supported by substantial record evidence and are otherwise not in accordance with law;

b.      Remand the *Final Results* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

c.      Grant such other relief as the Court shall deem just and proper.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Stephen A. Morrison
Ryan M. Migeed

MORRIS MANNING & MARTIN LLP
1333 New Hampshire Ave., NW, Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel for Plaintiff POSCO*

Dated: February 5, 2024