IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| POSCO,<br><br>                Plaintiff,<br><br>      and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>                Plaintiff-Intervenor,<br><br>      v.<br><br>UNITED STATES,<br><br>                Defendant,<br><br>      and<br><br>NUCOR CORPORATION,<br><br>                Defendant-Intervenor. | Before: Hon. Jane A. Restani,<br>            Judge<br><br>Court No. 24-00006 |

**DEFENDANT-INTERVENOR'S COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

                              Alan H. Price, Esq.
                              Christopher B. Weld, Esq.
                              Adam M. Teslik, Esq.
                              Paul A. Devamithran, Esq.

                              WILEY REIN LLP
                              2050 M Street, NW
                              Washington, DC 20036
                              (202) 719-7000

                              *Counsel for Nucor Corporation*

Dated: January 15, 2026

Ct. No. 24-00006

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 1

III. COMMERCE'S REMAND REDETERMINATION IS UNLAWFUL ........................... 3

IV. CONCLUSION .................................................................................................... 7

Ct. No. 24-00006

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CS Wind Vietnam Co. v. United States*,
   832 F.3d 1367 (Fed. Cir. 2016)..................................................................................5

*Fresh Garlic Producers Ass'n v. United States*,
   190 F. Supp. 3d 1302 (Ct. Int'l Trade 2016) ...............................................................6

*Mosaic Co. v. United States*,
   160 F.4th 1340 (Fed. Cir. 2025) .................................................................................5

*PPG Industries, Inc. v. United States*,
   978 F.2d 1232 (Fed. Cir. 1992).........................................................................1, 3, 4, 5

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii)..............................................................................................3

**Regulations**

19 C.F.R. § 351.502(b) ......................................................................................................3

**Administrative Materials**

*Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*,
   88 Fed. Reg. 86,318 (Dep't Commerce Dec.13, 2023) ..........................................1, 5

*Certain Epoxy Resins from Taiwan*,
   90 Fed. Reg. 14,618 (Dep't Commerce Apr. 10, 2025).............................................5

*Countervailing Duties*,
   63 Fed. Reg. 65,348 (Dep't Commerce Nov. 25, 1998)............................................3

*Forged Steel Fluid End Blocks from Italy*,
   85 Fed. Reg. 80,022 (Dep't Commerce Dec. 11, 2020) ............................................4

*Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam*,
   86 Fed. Reg. 28,566 (Dep't Commerce May 27, 2021) ............................................4

Ct. No. 24-00006

## I. INTRODUCTION

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following comments in opposition to the December 9, 2025 remand redetermination issued by the U.S. Department of Commerce ("Commerce"). Redetermination Pursuant to Ct. Remand (Dec. 9, 2025), ECF No. 60, P.R.R. 9 ("Remand Redetermination"). Nucor supports Commerce's Remand Redetermination with respect to the provision of K-ETS permits and thus limits these comments to the agency's determination that the provision of electricity for less than adequate remuneration ("LTAR") is not de facto specific. Nucor respectfully submits that this determination is unlawful and should be remanded for reconsideration.

## II. BACKGROUND

In the final results at issue in this appeal, Commerce determined that the Korean government's provision of electricity for LTAR was de facto specific because a small group of industries, including the steel industry, received a disproportionately large amount of the subsidy in relation to other industries. Issues and Decision Memorandum accompanying *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 88 Fed. Reg. 86,318 (Dep't Commerce Dec.13, 2023), P.R. 174 at 26 ("Final Results"). The Court remanded this determination for two reasons. First, citing *PPG Industries, Inc. v. United States*, 978 F.2d 1232, 1240-41 (Fed. Cir. 1992), the Court held that Commerce failed "to consider the actual make-up of the eligible firms when creating the group." *Posco v. United States*, Ct. No. 24-00006, Slip Op. 25-100 (Ct. Int'l Trade Aug. 8, 2025), ECF No. 51 at 6 ("Slip Op. 25-100") (internal quotations omitted). Second, the Court held that a finding of disproportionate receipt must "use a baseline that shows the Korean steel industry's subsidy is out of line with the industry's own usage, not just the benefits received by others." *Id*. at 9.

1

Ct. No. 24-00006

Commerce issued its draft remand redetermination on September 24, 2025. With respect to de facto specificity of the electricity for LTAR program, Commerce explained that "{b}ased on the Court's remand instructions and the specific record of the instant proceeding, we find that we do not have sufficient alternative information on the record of the underlying review to further consider a basis for the grouping of industries or enterprises, to establish a different baseline, or to otherwise further substantiate a de facto specificity determination . . . in accordance with the Court's *Remand Order*." Draft Results of Redetermination Pursuant to Second Court Remand, P.R.R. 1 (Sep. 24, 2025) at 4. It thus found that "there is insufficient evidence to demonstrate that the provision of electricity for LTAR program is specific, and, therefore . . . we are finding this program to be not countervailable." *Id*.

Nucor filed comments on the draft remand redetermination on September 29, 2025. Nucor Comments on Draft Remand Redetermination, P.R.R. 6, C.R.R. 3 (Sep. 29, 2025). Nucor argued that the draft redetermination with respect to the group of industries identified for specificity was insufficiently explained in light of the agency's rules and longstanding practice. *Id*. at 3. Nucor also argued that Commerce should consider whether an industry or group of industries was a predominant user of the subsidy if the agency believed there was insufficient record information to identify a different baseline for the purpose of disproportionate receipt. *Id*. In the final remand redetermination, Commerce agreed with Nucor's description of agency rules and practice but continued to find that the provision of electricity for LTAR is not de facto specific because "the record lacks the information necessary to perform the analysis suggested by the Court . . ." with respect to the grouping of industries. Remand Redetermination at 14. Based on its conclusion that it could not

2

Ct. No. 24-00006

identify a relevant group of industries or enterprises consistently with the Court's holding, Commerce did not address the issue of predominant use. *Id*. at 14-15.[1]

### III. <u>COMMERCE'S REMAND REDETERMINATION IS UNLAWFUL</u>

The statute provides, in relevant part, that a domestic subsidy is specific if (i) the actual recipients of the subsidy are limited in number, (ii) an enterprise or industry is a predominant user of the subsidy, (iii) an enterprise or industry received a disproportionately large amount of the subsidy, or (iv) the authority granting the subsidy exercises discretion in a manner that favors an industry or enterprise over others. 19 U.S.C. § 1677(5A)(D)(iii). The statute provides further that "any reference to an enterprise or industry . . . includes a group of such enterprises or industries." *Id*. § 1677(5A).

Commerce's longstanding practice is to consider whether a domestic subsidy is de facto specific to a group of industries or enterprises without regard to any similarities or lack thereof among the industries or enterprises comprising the group. The agency's rules provide explicitly that "{i}n determining whether a subsidy is being provided to a 'group' of enterprises or industries . . . the Secretary is not required to determine whether there are shared characteristics among the enterprises or industries that are eligible for, or actually receive, a subsidy." 19 C.F.R. § 351.502(b). This rule was promulgated with explicit reference to the *PPG Industries* case to address "whether the Department must examine the 'actual make-up' of a group of beneficiaries when performing a specificity analysis." *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,356 (Dep't Commerce Nov. 25, 1998) (final rule). Commerce concluded that:

> {T}he Act provides that a subsidy may be found to be specific if it is limited to a "group" of enterprises or industries. There is no requirement that the members of a group share similar characteristics. The purpose of the specificity test is simply to

---

[1] Because Commerce found that it could not identify a group of industries or enterprises and did not address disproportionality or predominant use, Nucor limits these comments to the issue of industry grouping.

3

Ct. No. 24-00006

> ensure that subsidies that are distributed very widely throughout an economy are not countervailed. There is no basis for adding the further requirement that subsidies that are not widely distributed are also confined to a group of enterprises or industries that share similar characteristics.

*Id*. at 65,357.

Commerce observed that *PPG Industries* was decided under the prior version of the statute and that, to the extent that the case remained relevant at all, it was limited in application because it sustained a determination considering the actual make-up of <u>eligible firms</u> to determine whether those <u>firms</u> operated in a limited group of industries. *Id*. *See also*, *PPG Industries*, 978 F.2d 1232, 1240-41 ("{A}lthough the actual number of <u>eligible firms</u> must be considered, it is not controlling. Instead, the actual make-up of the <u>eligible firms</u> must be evaluated {to determine} whether those <u>firms</u> comprise a specific industry or group of industries.") (emphasis added). As Commerce recognized, therefore, *PPG Industries* articulates no requirement related to the "actual make-up" of <u>industries</u> comprising a group.

Since promulgating and explaining its rule that any "shared characteristics among" the industries comprising a group are irrelevant to the specificity analysis, Commerce has consistently rejected attempts to impose such a requirement on its determinations. *See, e.g.*, Issues and Decision Memorandum accompanying *Forged Steel Fluid End Blocks from Italy*, 85 Fed. Reg. 80,022 (Dep't Commerce Dec. 11, 2020) (final affirm. deter. countervailing duty deter.) at 18 ("The recipients of a subsidy . . . can be 'limited in number' within the meaning of the Act even when they come from a diverse set of industries and even when they share no common characteristics."); Issues and Decision Memorandum accompanying *Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam*, 86 Fed. Reg. 28,566 (Dep't Commerce May 27, 2021) (final affirm. countervailing duty deter.) at 19-20 ("Because there need not be shared characteristics among the enterprises that comprise a 'group,' it does not matter if these enterprises represent unrelated

4

Ct. No. 24-00006

industries."); Issues and Decision Memorandum accompanying *Certain Epoxy Resins from Taiwan*, 90 Fed. Reg. 14,618 (Dep't Commerce Apr. 10, 2025) (final affirm. deter. countervailing duty deter.) at 20-21 ("{T}here is no requirement under {the statute} that requires Commerce to analyze whether the industries within a group are related in the manner Nan Ya claims.").

    Nucor accepts that Commerce must issue its remand redetermination in a manner that addresses the Court's holding, Remand Redetermination at 14, but any determination must also be adequately explained in light of the statute, Commerce's rules and practice, and the record before the agency. *See, e.g.*, *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1380 (Fed. Cir. 2016) (requiring "a coherent, full explanation" that "lay{s} out and justif{ies} each step so that the {the court} may see how the ultimate result is grounded in a justified statutory interpretation and the evidence of record."). Here, neither the Court nor any party to this appeal has questioned either the lawfulness of Commerce's rule as such or the consistency of the Final Results with the agency's practice in implementing it. The Court's opinion in fact acknowledges the likely "limitations of {the} proposition" drawn from *PPG Industries* that "the actual make-up of the eligible firms . . . determines whether those firms comprise a specific industry or group of industries." Slip Op. 25-100 at 5 (citation omitted). The Court thus remanded for additional explanation without requiring Commerce to conduct any specific type of analysis. *See id.* at 6. *See also*, *Mosaic Co. v. United States*, 160 F.4th 1340, 1347-48 (Fed. Cir. 2025) ("{T}he specificity test cannot be reduced to a precise mathematical formula and instead, the Department must exercise judgment and balance various factors in analyzing the facts of a particular case.").

    Given the explicit provision in Commerce's rule, the agency's longstanding practice implementing it, and the discretion afforded to the agency in conducting de facto specificity analyses, it is insufficient for the Remand Redetermination to find simply that "the record lacks the information

Ct. No. 24-00006

necessary to perform the analysis suggested by the Court," with no further explanation as to what exactly the agency believes that analysis entails and what record information is necessary to support it. Remand Redetermination at 14. To the extent that Commerce believes the Court's remand order required an analysis that its questionnaires in the underlying review were not designed to address, then it was within the agency's discretion to reopen the record on remand to solicit the information necessary to support that analysis. *See id.* at 14 (agreeing "that the statute does not require Commerce to consider whether there are shared characteristics in a group of enterprises or industries {receiving} the subsidy when considering a specificity determination (as articulated in Commerce's regulations) . . ."). *See also*, *Fresh Garlic Producers Ass'n v. United States*, 190 F. Supp. 3d 1302, 1306-07 (Ct. Int'l Trade 2016) ("Commerce generally may reopen the administrative record on remand.").

      Given the clarity of Commerce's rule, the weight of its practice, and its discretion to reopen the record on remand, the Remand Redetermination with respect to de facto specificity of the electricity for LTAR program is insufficiently explained and should be remanded for reconsideration.

## IV. CONCLUSION

For the reasons discussed herein, Nucor respectfully requests that the Count find that Commerce's Remand Redetermination is unlawful and remand for further consideration of the de facto specificity of the electricity for LTAR program.

                                             Respectfully submitted,

                                             */s/ Alan H. Price*
                                             Alan H. Price, Esq.
                                             Christopher B. Weld, Esq.
                                             Adam M. Teslik, Esq.
                                             Paul A. Devamithran, Esq.

                                             **WILEY REIN LLP**
                                             2050 M Street, NW
                                             Washington, DC 20036
                                             (202) 719-7000

                                             *Counsel for Nucor Corporation*

Dated: January 15, 2026

Ct. No. 24-00006

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor's Comments in Opposition of the Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 1,843 words.

   /s/ Alan H. Price   
(Signature of Attorney)

   Alan H. Price   
(Name of Attorney)

   Nucor Corporation   
(Representative Of)

January 15, 2026
(Date)
