**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JANE A. RESTANI**

| | |
|---|---|
| POSCO,<br><br>        Plaintiff,<br><br>  and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>        Plaintiff-Intervenor,<br><br>  v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>  and<br><br>NUCOR CORPORATION,<br><br>        Defendant-Intervenor. | **PUBLIC DOCUMENT**<br><br>Court No. 24-cv-00006-JAR |

**PLAINTIFF'S COMMENTS IN SUPPORT OF REMAND RESULTS**

                                                                     Brady W. Mills
                                                                       R. Will Planert
                                                                       Mary S. Hodgins
                                                                       Nicholas C. Duffey

                                                      **TAFT STETTINIUS & HOLLISTER LLP**
                                                      1333 New Hampshire Ave, N.W., Suite 800
                                                                       Washington, D.C. 20036
                                                                       (202) 216-4116

February 20, 2026                                               *Counsel to Plaintiff POSCO*

**TABLE OF CONTENTS**

I.  ARGUMENT ............................................................................................................................ 2

    A.  Commerce's Determination That the Electricity for LTAR Program Is Not *De Facto* Specific Should Be Affirmed. ......................................................................... 2

    B.  Defendant-Intervenor's Arguments Are Unpersuasive. .......................................... 4

II. CONCLUSION ....................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chicago & Southern Air Lines v. Waterman S. S. Corp.*,
    333 U.S. 130 , 68 S. Ct. 431 (1948) ............................................................................................6

*Hitachi Energy USA Inc. v. United States*,
    F. 4th 1375 (Fed. Cir. 2022) ........................................................................................................6

*Hyundai Steel v. United States*,
    745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ............................................................................3, 7

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369, 144 S. Ct. 2244 (2024) .........................................................................................6

*Neal v. United States*,
    516 U.S. 284, 116 S. Ct. 763 (1996) ...........................................................................................6

*Oman Fasteners, LLC v. United States*,
    125 F. 4th 1068 (Fed. Cir. 2025) .............................................................................................4, 6

*POSCO v. United States*,
    794 F. Supp. 3d 1402 (Ct. Int'l Trade 2025) ...................................................................... *passim*

*PPG Industries Inc. v. United States*,
    978 F.2d 1232 (Fed. Cir. 1992) ................................................................................................6, 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) ....................................................................................................5

**Statutes**

19 U.S.C. § 1677(5A)(D)(iii)(III) ......................................................................................................2

**Regulations**

19 C.F.R. § 351.502(b) ............................................................................................................5, 6, 7

**Other Authorities**

*Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea:*
    *Final Results and Partial Rescission of Countervailing Duty Administrative*
    *Review; 2021*,
    88 Fed. Reg. 86,318 (Dep't Commerce Dec. 13, 2023) .............................................................1

Uruguay Round Agreements Act Statement of Administrative Action, Urugay Round
    Agreements Act Statement of Administrative Action, H.R. Doc. No. 103-316,
    1994 U.S.C.C.A.N. 4040 (Sept. 27, 1994)..................................................................................7

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE**

| | |
|---|---|
| POSCO,<br><br>　　　　Plaintiff,<br><br>　and<br><br>THE GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>　　　　Plaintiff-Intervenor,<br><br>　v.<br><br>UNITED STATES<br><br>　　　　Defendant,<br><br>　and<br><br>NUCOR CORPORATION<br><br>　　　　Defendant-Intervenor. | **PUBLIC DOCUMENT**<br><br>No. 24-cv-00006-JAR |

**PLAINTIFF'S COMMENTS IN SUPPORT OF REMAND RESULTS**

On behalf of Plaintiff POSCO and pursuant to Rule 56.2(h)(3), we hereby comment in support of the U.S. Department of Commerce's ("Commerce" or "the Department") Final Results of Redetermination Pursuant to Second {*sic*} Court Remand, *POSCO v. United States*, No. 24-cv-00006-JAR (Ct. Int'l Trade Dec. 9, 2025), ECF No. 60, PRR No. 9 ("*Remand Results*").[1] The administrative determination at issue is *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 86,318 (Dep't Commerce Dec. 13, 2023) ("*Final Results*"), PR No. 178 and accompanying Issues and Decision Memorandum ("*Final IDM*"), PR No. 174. As discussed below, Commerce's determination in the *Remand Results* that

---

[1] Citations to the administrative record shall be to the public or confidential record document number ("PR" or "CR") followed by the page or exhibit number. Citations to the remand administrative record shall be to the public or confidential remand record document number ("PRR" or "CRR") followed by the page or exhibit number.

the electricity for less than adequate remuneration ("LTAR") program is not specific is supported by substantial evidence and otherwise in accordance with law.

I. **ARGUMENT**

        A. Commerce's Determination That the Electricity for LTAR Program Is Not *De Facto* Specific Should Be Affirmed.

In the *Final Results*, Commerce determined that the provision of electricity for LTAR was *de facto* specific pursuant to section 771(5A)(D)(iii)(III) of the Tariff Act of 1930, *as amended*, because the steel industry and two other unrelated industries grouped together allegedly received a disproportionately large amount of the subsidy. *Final IDM* at Comment 1. The Court found that Commerce failed to support with substantial evidence the determination that the provision of electricity for LTAR was *de facto* specific. *POSCO v. United States*, 794 F. Supp. 3d 1402, 1410-11 (Ct. Int'l Trade 2025). The Court found that Commerce's "only reasoning for its disproportionality analysis is that the Korean steel industry" along with two other unrelated industries "use{d} a large amount of electricity," but that the plain meaning of the statute required Commerce to "use a baseline that shows the Korean steel industry's subsidy is out of line with the industry's own usage, not just the 'benefits received by others.'" *Id.* at 1411. The Court also found that Commerce acted unreasonably when it grouped the Korean steel industry with the two other unrelated industries for its disproportionality analysis: "Commerce cannot use its discretion to choose the largest consumers of subsidy, group them together with no further explanation, and call it a reasonable choice." *Id.* at 1408.

Given the Court's decision, Commerce searched the administrative record to determine if there was sufficient information to address the legal infirmities in the *Final Results*. Based on that careful consideration, Commerce determined in the *Remand Results* that it does "not have sufficient alternative information on the record of the underlying review to further consider a

2

basis for the grouping of industries or enterprises, to establish a different baseline, or to otherwise further substantiate {the} *de facto* specificity determination under section 771(5A)(D)(iii) of the Act." *Remand Results* at 4. Accordingly, on remand, Commerce determined "that there is insufficient evidence" to demonstrate that the provision of electricity for LTAR is specific and countervailable. *Id.* at 4-5. The *Remand Results* on this issue are consistent with the Court's decision and should be affirmed.

First, Commerce correctly determined that it "did not have sufficient alternative information on the record of the underlying review . . . to establish a different baseline, or to otherwise further substantiate a *de facto* specificity determination . . . in accordance with the Court's *Remand Order*." *Remand Results* at 4. This alternative information was necessary given the Court's holding that the definition of disproportionate "implies comparing the subsidy received to some type of baseline or expected value. When a subsidy is usage-based, the baseline for this comparison will ordinarily be an industry's usage or the subsidized good or service . . . ." *POSCO*, 794 F. Supp. 3d at 1409. After searching the record, Commerce correctly concluded that there was insufficient information to establish the required baseline for comparison or to otherwise demonstrate that the steel industry received a disproportionate amount of the subsidy from the electricity for LTAR program. *See POSCO*, 794 F. Supp. 3d at 1410 (*quoting Hyundai Steel v. United States*, 745 F. Supp. 3d 1345, 1353 (Ct. Int'l Trade 2024) ("Commerce, however, was required by the plain meaning of the statute to use a baseline that shows the Korean steel industry's subsidy is out of line with the industry's own usage, not just the 'benefits received by others.'")).

3

Second, Commerce correctly found that it did "not have sufficient alternative information on the record to further consider a basis for the grouping of industries or enterprises . . . in accordance with the Court's *Remand Order*." *Remand Results* at 4. This alternative information was necessary given the Court's holding that Commerce had to "consider the actual make-up of the firms" in its grouping of industries or enterprises and that "Commerce cannot use its discretion to choose the largest consumers of a subsidy, group them together with no further explanation, and call it a reasonable choice." *POSCO*, 794 F. Supp. 3d at 1408 (*citing Oman Fasteners, LLC v. United States*, 125 F. 4th 1068, 1086-87 (Fed. Cir. 2025)). After searching the record, Commerce correctly concluded that the data on the record was insufficient to analyze the make-up of the firms in the grouping and to explain why the grouping was reasonable.

Commerce thus correctly concluded that "there is insufficient evidence to demonstrate that the provision of electricity for LTAR program is specific, and, therefore, for purposes of the review period covered by this remand, we are finding this program to be not countervailable." *Remand Results* at 4-5. This remand determination complies with the Court's decision and should be affirmed.

B. Defendant-Intervenor's Arguments Are Unpersuasive.

In its Comments in Opposition to the *Remand Results*, Defendant-Intervenor only challenges Commerce's determination that it did not have sufficient information to further consider a basis for the grouping of industries or enterprises. Defendant-Intervenor's Comments in Opposition to The Final Results of Redetermination Pursuant to Court Remand, *POSCO v. United States*, No. 24-cv-00006-JAR (Jan. 15, 2026), ECF No. 66 ("Defendant-Intervenor's Remand Comments") at 3-6. Defendant-Intervenor does not challenge Commerce's determination that it did not have sufficient information to establish a different baseline, or to

4

further substantiate a *de facto* specificity determination under section 771(5A)(D)(iii) of the Act, in accordance with the Court's decision.  *See id.* at 3-5.[2]  Defendant-Intervenor has thus waived any challenges to that aspect of the *Remand Results*.  *See, e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (arguments not developed in briefs are waived).

On the grouping issue, Defendant-Intervenor argues that given Commerce's shared characteristics regulation and the practice of implementing it by not requiring Commerce to determine whether members of a group share similar characteristics, "it is insufficient for the Remand Redetermination to find simply that 'the record lacks the information necessary to perform the analysis suggested by the Court,' with no further explanation as to what exactly the agency believes that analysis entails and what record information is necessary to support it."  Defendant-Intervenor's Remand Comments at 5-6.  Defendant-Intervenor also points to Commerce's discretion to reopen the record as necessary to try and support its decision.  *See id.* at 6.  Defendant-Intervenor's arguments are not persuasive.

The shared characteristics regulation at 19 C.F.R. § 351.502(b) and Commerce's practice in implementing it do not relieve Commerce of the obligation to follow the Court's decision.  The Court held that Commerce's grouping determination must be reasonable and that Commerce must consider the make-up of the firms in any grouping.  *POSCO*, 794 F. Supp. 3d at 1408 ("Commerce cannot use its discretion to choose the largest consumers of a subsidy, group them

---

[2] Defendant-Intervenor incorrectly claims that Commerce did not address disproportionality (or predominant use) and thus Defendant-Intervenor limited its comments to the issue of the industry grouping.  *See* Defendant-Intervenor's Remand Comments at 3, fn. 1.  While Commerce did find that it did not have sufficient information to address the grouping it also found that it had insufficient information "to establish a different baseline, or to otherwise further substantiate a *de facto* specificity determination under section 771(5A)(D)(iii) of the Act, in accordance with the Court's Remand Order."  *Remand Results* at 4.

5

together with no further explanation, and call it a reasonable choice."). As support, the Court cited precedent from the Federal Circuit for the fundamental principle that Commerce determinations are unsupported by substantial evidence where they lack reasonable justification. *POSCO*, 794 F. Supp. 3d at 1408 (citing *Hitachi Energy USA Inc. v. United States*, F. 4th 1375, 1386 (Fed. Cir. 2022); *Oman Fasteners LLC v. United States* 125 F.4th 1068, 1086-87 (Fed. Cir. 2025)). The Court also cited to the Federal Circuit's decision in *PPG Industries Inc. v. United States*, 978 F.2d 1232, 1240-41 (Fed. Cir. 1992) for the proposition that Commerce must consider "the actual make-up of the eligible firms" when creating a group of enterprises or industries for specificity purposes. *See POSCO*, 794 F. Supp. 3d at 1408. Consistently, Commerce properly determined on remand that it could not consider the make-up of the firms in its grouping of enterprises or industries with the information that was currently on the administrative record and thus could not explain why its grouping was reasonable. *Remand Results* at 4. No further explanation was required.

The Court was aware of 19 C.F.R. § 351.502(b) and acknowledged it in its decision but did not agree that it insulates Commerce from providing a reasonable basis for its decision to group the steel industry with other large but unrelated industries.[3] *See POSCO*, 794 F. Supp. 3d at 1408. Specifically, the Court found that "{w}hile Commerce relied on its regulation to avoid

---

[3] Indeed, an administrative agency cannot overrule binding judicial precedent from *PPG Industries Inc.* via the promulgation of a regulation. *Chicago & Southern Air Lines v. Waterman S. S. Corp.*, 333 U.S. 130, 113-114, 68 S. Ct. 431, 437 (1948) ("It has also been the firm and unvarying practice of Constitutional Courts to render no judgments not binding and conclusive on the parties and none that are subject to later review or alteration by administrative action."); *Neal v. United States*, 516 U.S. 284, 116 S. Ct. 763 (1996) (declining to defer to a statutory construction adopted by an agency that conflicted with one the Court had previously adopted in a prior case); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 371, 144 S. Ct. 2244, 2261 (2024) ("{C}ourts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action.").

6

considering 'shared characteristics among the enterprises or industries' . . . Commerce was nonetheless required by Federal Circuit precedent to consider 'the actual make-up of the eligible firms' when creating the group.'" *Id.* (*citing PPG Industries Inc.*, 978 F.2d at 1240-41).  The Court also found that: "whatever the limits of {the} proposition" in *PPG Industries* that Commerce had to consider the make-up of the eligible industries to determine whether the relevant firms comprise a group of industries,[4] "any discretion the statute gives Commerce to group industries is abused when it is not exercised *reasonably* 'within the constraints of the statute and record.'"  *POSCO*, 794 F. Supp. 3d at 1408 (emphasis added).  The Court concluded that, "even if Commerce is correct that it can choose any 'reasonable methodology in making a *de facto* specific determination,' the agency must provide a logical basis for why these industries should be grouped together."  *Id.* at 1408.  Commerce correctly concluded that it could not provide such an explanation with the information on the record.

If more were needed, this court has previously addressed the applicability of 19 C.F.R. § 351.502(b) and found that it only applies in situations where "the subsidies are not widely available." *Hyundai Steel*, 745 F. Supp. 3d at 1353.  As noted by the Court, "Commerce recognized that almost everyone in Korea uses the generally available subsidized electricity." *POSCO*, 794 F. Supp. 3d at 1410 (citing *Final IDM* at 25).  Therefore, the shared characteristics regulation is not applicable here given that electricity is widely available in Korea.  Defendant-Intervenor's heavy reliance on this regulation and Commerce's practice implementing it is thus

---

[4] The Federal Circuit's decision in *PPG Industries Inc.* remains law.  *See* Urugay Round Agreements Act Statement of Administrative Action, H.R. Doc. No. 103-316 at 929, 1994 U.S.C.C.A.N. 4040, 4241 (Sept. 27, 1994) ("{T}he substance of the specificity test in section 771(5A) generally reflects existing law and practice.").

7

entirely misplaced and does not support its argument that Commerce was required to provide further explanation for its decision.

Finally, while Commerce may have discretion to reopen the record on remand it is certainly not required to do so. In the *Remand Results*, Commerce declined to exercise that discretion and instead decided to base its decision on the information that is currently part of the record. There is thus no basis for Defendant-Intervenor to request another remand for Commerce to reconsider a discretionary decision it has already used its discretion to make.

## II.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reject the arguments raised by Defendant-Intervenor and sustain the *Remand Results* that the electricity for LTAR program is not specific and is thus not countervailable in this case.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey

**TAFT STETTINIUS & HOLLISTER LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to Plaintiff POSCO*

February 20, 2026

*Certificate Of Compliance*

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2,560 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills
Brady W. Mills