**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JANE A. RESTANI**

POSCO,

Plaintiff,

and

GOVERNMENT OF THE REPUBLIC OF KOREA,

Plaintiff-Intervenor,

v.

UNITED STATES,

Defendant,

and

NUCOR CORPORATION,

Defendant-Intervenor.

**Court No. 24-00006**

**NONCONFIDENTIAL**

Business Proprietary Information Removed from Page 3.

**PLAINTIFF-INTERVENOR GOVERNMENT OF THE REPUBLIC OF KOREA'S COMMENTS IN SUPPORT OF THE FINAL RESULTS OF REDETERMINATION**

Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: February 20, 2026

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................ i

**TABLE OF AUTHORITIES** ........................................ ii

**INTRODUCTION** ........................................ 1

**ARGUMENT** ........................................ 1

**I. COMMERCE'S DETERMINATION NOT TO COUNTERVAIL THE PROVISION OF ELECTRICITY FOR LTAR WAS REASONABLE** ........................................ 2

**II. COMMERCE ADEQUATELY EXPLAINED ITS DETERMINATION NOT TO COUNTERVAIL THE ALLEGED PROVISION OF ELECTRICITY FOR LTAR** ........................................ 4

**CONCLUSION** ........................................ 9

# TABLE OF AUTHORITIES

## CASES

*Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354 (Ct. Int'l Trade 2001) ............... 3, 4

*Corus Staal BV v. United States Steel Corporation*, 502 F.3d 1370 (Fed. Cir. 2007)..................... 5

*Fresh Garlic Producers Ass'n v. United States*, 190 F. Supp. 3d 1302 (Ct. Int'l Trade 2016) ....... 8

*Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024)...................... 2, 7

*Mosaic Co. v. United States*, 774 F. Supp. 3d 1362 (Ct. Int'l Trade 2025).................................... 3

*PPG Indus., Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992) ................................................ 7

*Smithkline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312 (Fed. Cir. 2006)................................ 5

## REGULATIONS

19 C.F.R. § 351.502(b)............................................................................................................... 6

**INTRODUCTION**

In its opinion remanding the *Final Results* to Commerce, the Court directed the U.S. Department of Commerce ("Commerce") to reconsider its finding that the alleged provision of electricity for less than adequate remuneration ("LTAR") is *de facto* specific. Court Op. and Order, ECF No. 51 ("Court Op.") at 20. In its Final Results of Redetermination Pursuant to Court Remand, ECF No. 60-1 ("Final Remand Results"), Commerce found that the record does not support a finding that the alleged provision of electricity for LTAR is specific. Final Remand Results at 4-5. The GOK agrees with Commerce's determination on remand not to countervail the electricity for LTAR program.

**ARGUMENT**

Commerce's finding that the record of the underlying review does not provide a sufficient basis to find a *de facto* specificity determination under section 771(5A)(D)(iii) of the Tariff Act of 1930, as amended ("the Act"), is reasonable and consistent with the Court's directives. Record evidence demonstrates that when considering the make-up of the steel industry and the other two industries, there is no logical basis for Commerce to group them together. Further, the record clearly shows that neither POSCO nor the steel industry consumed disproportionately large amounts of electricity as a disparity in electricity consumption across industries due to the nature of their businesses does not equate to disproportionality. Nor does the record show that POSCO or the steel industry were a predominant user of electricity. Given the lack of record evidence supporting a *de facto* specificity determination, it was reasonable for Commerce to conclude that the alleged provision of electricity for LTAR was not countervailable.

In remanding the *Final Results* to Commerce, the Court instructed Commerce to "show more to support" and "provide a logical basis" to justify a finding of *de facto* specificity. As

Commerce was unable to do so upon reconsidering the record, Commerce found that the alleged provision of electricity for LTAR was not specific and thus not countervailable. Commerce was not required to do more, and its determination is consistent with the Court's directives.

## I. COMMERCE'S DETERMINATION NOT TO COUNTERVAIL THE PROVISION OF ELECTRICITY FOR LTAR WAS REASONABLE

In remanding Commerce's *Final Results*, the Court instructed Commerce to reconsider its specificity determination pertaining to the GOK's alleged provision of electricity for LTAR by (1) providing a reasonable explanation for its decision to group the steel industry with two unrelated industries and (2) showing "more to support a finding of disproportionate subsidy use." Court Op. at 4-10. The Court found that Commerce's use of its discretion to select and group the three largest consumers of electricity without considering the "actual make-up of the firms" was insufficient to demonstrate a "logical basis for why these industries should be grouped together." *Id.* at 5-6. It further held that Commerce failed to use a "baseline that shows the Korean steel industry's subsidy is out of line with the industry's own usage, not just the benefits {received by} others." *Id.* at 9 (citing *Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345, 1351 (Ct. Int'l Trade 2024)) (internal quotations omitted).

Consistent with the Court's remand instructions, Commerce correctly determined in its Final Remand Results that the record did not contain "sufficient alternative information" to consider a "basis for the grouping of industries or enterprises," to establish a "different baseline," or to otherwise "substantiate a *de facto* specificity determination under section 771(5A)(D)(iii) of the Act." Final Remand Results at 4-5. Commerce's determination not to countervail the provision of electricity for LTAR was reasonable and should be sustained.

As the GOK explained in its brief, record evidence does not support a decision to group together the steel industry with two unrelated industries. Pl.-Intervenor's Br., ECF No. 32, at 4-

9. The record does not provide a "logical basis for why these industries should be grouped together." Court Op. at 6. Other than the fact that the three industries Commerce originally grouped together are the largest consumers of electricity, which the Court already found as insufficient to justify Commerce's grouping, nothing in the record suggests that the steel industry shares a similar make-up with the other two industries. Appx87021-87022.

Nor does the record support a finding of disproportionate subsidy use by POSCO, the steel industry, or any group of industries. Electricity in Korea is broadly available and widely used throughout the economy. As this court has emphasized, such a "broad-based, nationwide program … is not the type of program that satisfies the specificity requirement." *Mosaic Co. v. United States*, 774 F. Supp. 3d 1362, 1382-83 (Ct. Int'l Trade 2025). Furthermore, record evidence only shows that there was disparity in electricity consumption which can be explained by the difference in size across industries. Some enterprises and industries are much larger than others. It is to be expected that large industries like the **[ ]**, and steel industries—the three industries identified by Commerce as supposedly consuming a disproportionate amount of electricity—would consume more electricity than relatively smaller industries. Appx87021-87022. Such disparity should not and cannot be equated to disproportionality. *See Bethlehem Steel Corp. v. United States*, 140 F. Supp. 2d 1354, 1369 (Ct. Int'l Trade 2001).

Moreover, the record shows that neither POSCO nor the steel industry were predominant users of electricity or used a disproportionately large amount of electricity. The steel industry consumed only **[ ]** percent of the total amount of electricity, or **[ ]** percent of the total industrial electricity, consumed in Korea. Even the top industry in terms of electricity consumption (i.e., the **[ ]**) consumed only **[ ]** percent. *See*

Appx87021-87022; Appx91736-91744; Appx97564. These percentages cannot be considered predominant or disproportionately large, particularly when Commerce and this Court have found that the receipt of more than 50 percent of the benefit by a single industry is not necessarily disproportionate. *See Bethlehem Steel Corp.*, 140 F. Supp. 2d at 1369.

Based on this record evidence, Commerce correctly concluded that the alleged provision of electricity for LTAR is not specific and thus not countervailable.

## II. COMMERCE ADEQUATELY EXPLAINED ITS DETERMINATION NOT TO COUNTERVAIL THE ALLEGED PROVISION OF ELECTRICITY FOR LTAR

In its comments, Defendant-Intervenor Nucor Corporation ("Petitioner") argues that in its Final Remand Results pertaining to the GOK's alleged provision of electricity for LTAR, Commerce was required but failed to sufficiently explain its decision not to countervail the program. Def.-Intervenor's Comments in Opposition to the Final Results of Redetermination Pursuant to Court Remand, ECF No. 66 ("Pet'r Comments") at 3-6. In particular, Petitioner insists that "Commerce's longstanding practice" does not require Commerce to find shared characteristics among or actual make-up of industries comprising the group. *Id.* at 3-4. It attempts to distinguish *PPG Indus., Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992), by reasoning that the case "articulate{d} no requirement related to the actual make-up of <u>industries</u> {compared to eligible firms} comprising a group." Pet'r Comments at 4 (internal quotations omitted). Petitioner then concludes that "{g}iven the explicit provision in Commerce's rule, the agency's longstanding practice implementing it, and the discretion afforded to the agency," Commerce should have provided more explanation as to why it determined that record lacks the information necessary to find *de facto* specificity. *Id.* at 5-6.

The GOK initially observes that Petitioner's argument is limited to Commerce's decision not to group the steel industry with other industries for purposes of the *de facto* specificity

analysis. In its comments submitted to Commerce regarding Commerce's draft remand results, Petitioner asserted only that a group of industries consumed a disproportionately large amount of electricity or was a predominant user of electricity. Letter from Wiley to Sec'y of Commerce, "Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Comments on Draft Remand Results" at 3-7 (REM – SLIP OP. 25-100 C.R.3/P.R.6) ("Pet'r Comments on Draft Remand Results"). Similarly, Petitioner states in its comments on the Final Remand Results that it "limits these comments to the issue of industry grouping." Pet'r Comments at 3, n.1. By restricting its comments to grouping, Petitioner abandoned any arguments against Commerce's determination that it did not have sufficient alternative information on the record to establish a different baseline. Moreover, Petitioner does not argue that the record evidence supports—much less compels—a finding that the provision of electricity was *de facto* specific based on the electricity consumption of just POSCO or just the steel industry, and thus failed to develop any arguments before Commerce or this Court with respect to Commerce's explanations and findings as they pertained to the steel industry or POSCO considered on their own rather than as part of a group of industries. Accordingly, Petitioner has failed to exhaust its administrative remedies and has waived any arguments (i) challenging Commerce's determination that the record lacked sufficient information to establish a different baseline and (ii) asserting *de facto* specificity based on the electricity consumption of just POSCO or just the steel industry. *See Corus Staal BV v. United States Steel Corporation*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) ("absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies"); *Smithkline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312, 1320 (Fed. Cir. 2006) (explaining that arguments are waived when not developed in briefs).

Turning to Petitioner's arguments with respect to grouping, the Court directed Commerce on remand to reconsider its determination as to the specificity of the alleged electricity for LTAR program and issue "a determination consistent with this opinion." Court Op. at 20. Consistent with the Court's instructions, Commerce reconsidered record evidence and found that there is insufficient information on the record to justify grouping the steel industry with the two other industries consuming the largest amounts of electricity for purposes of the *de facto* specificity analysis. Final Remand Results at 4-5. Contrary to Petitioner's contention, nothing more was required from Commerce.

Petitioner's comments before Commerce and the Court point to 19 C.F.R. § 351.502(b), which provides that "{i}n determining whether a subsidy is being provided to a 'group' of enterprises or industries . . . the Secretary is not required to determine whether there are shared characteristics among the enterprises or industries that are eligible for, or actually receive, a subsidy." Petitioner also asserts that the Federal Circuit's opinion in *PPG Industries*, 978 F.2d 1232, does not actually require Commerce to consider the make-up of industries comprising a group, and thus Commerce is not required to provide any justification for grouping industries together. Pet'r Comments at 6-7.

The Court, however, already acknowledged Commerce's regulation and rejected Commerce's reliance on it to jettison any requirement that Commerce provide a reasoned basis for grouping disparate industries together for purposes of analyzing *de facto* specificity. Court Op. at 5-6. Allowing Commerce to do so, the Court explained, would amount to an abuse of whatever discretion Commerce has under the statute and the general requirement that Commerce support its determinations with substantial evidence. *Id.* In separate litigation regarding the same Korean electricity program, this Court has held that 19 C.F.R. § 351.502(b) obviates the

need for Commerce to consider whether there are shared characteristics among enterprises or industries that are grouped together "only when the subsidies are not widely available." *Hyundai Steel Co.*, 745 F. Supp. 3d at 1353. Electricity, however, is widely available in Korea, and thus Commerce must provide a reasoned explanation for grouping enterprises or industries for its *de facto* specificity analysis. *Id.*

Moreover, the analysis prescribed in *PPG Industries* determines whether the recipients of a subsidy "comprise a specific industry or *group of industries*." *PPG Industries*, 978 F.2d at 1240-41 (emphasis added). Thus, the analysis is also relevant to Commerce's grouping of industries, as the Court concluded in its opinion. Neither Petitioner nor Commerce offer any reason why Commerce would be precluded from arbitrarily grouping individual enterprises when determining whether a subsidy is "specific" to a group of enterprises while at the same time be permitted to arbitrarily group industries in determining whether a subsidy is "specific."

In its comments before Commerce, Petitioner offered no reasonable basis for grouping the steel industry with the other two industries consuming the largest amounts electricity, and it did not suggest to Commerce that reopening the record to gather more information would aid in Commerce's analysis. Pet'r Comments on Draft Remand Results at 3-6; *see also* Final Remand Results at 15 (noting that "Nucor has pointed to no record information that Commerce can utilize to complete {the required} analysis"). Rather, Petitioner argued that "{e}ven suggesting that some sort of evidence establishing some sort of relationship or similarity among the three industries at issue here flies in the face of both rule and practice and effectively means that the agency may no longer apply 19 C.F.R. § 351.502(b) in accordance with its plain meaning and longstanding interpretation." Pet'r Comments on Draft Remand Results at 5. Petitioner's argument that 19 C.F.R. § 351.502(b) allows Commerce to arbitrarily group enterprises or

industries for purposes of the *de facto* specificity analysis was squarely rejected by the Court, as Commerce acknowledged. Court Op. at 5-6; Final Remand Results at 14 & n.44. The Court directed Commerce to issue a remand determination that was consistent with the Court's opinion. Court Op. at 20. Commerce provided a reasonable and adequate response to Petitioner's argument by explaining that the argument was inconsistent with the Court's interpretation of Commerce's legal obligations. Nothing more needed to be said.

Petitioner then argued that "{t}o the extent that any explanation or evidence regarding the 'make-up' of the industries or enterprises in a group is necessary, it should be sufficient for the purpose of an energy subsidy that the predominant or disproportionate beneficiaries thereof are a small group of energy-intensive industries." Pet'r Comments on Draft Remand Results at 5-6. In other words, according to Petitioner, Commerce's grouping of the largest electricity-consuming industries together was reasonable because they were the largest users of the alleged subsidy. The Court had already squarely rejected that position as well, which Commerce recognized. Court Op. at 6 ("Commerce cannot use its discretion to choose the largest consumers of a subsidy, group them together with no further explanation, and call it a reasonable choice."); Final Remand Results at 14 (discussing Court's analysis). Again, Commerce was required to issue its remand determination consistent with the Court's opinion. Court Op. at 20. Commerce's explanation that the Court had already rejected Petitioner's proposed basis for grouping the steel industry with two other industries was reasonable and fully adequate.

Finally, Petitioner's suggestion that Commerce could have reopened the record is likewise unavailing. Commerce may have the discretion to reopen the record on remand, but it is not obligated to do so. *Fresh Garlic Producers Ass'n v. United States*, 190 F. Supp. 3d 1302, 1306-07 (Ct. Int'l Trade 2016). Commerce acted within its discretion in not reopening the

record, and there is no basis for Petitioner to request another remand for Commerce to reconsider whether to reopen the record.

In sum, Petitioner has not offered Commerce or this Court any arguments that could support a *de facto* specificity finding that this Court has not rejected already. The Court should therefore sustain Commerce's determination in the Final Remand Results that the record does not support a finding that the alleged provision of electricity for LTAR is specific.

## CONCLUSION

For the reasons discussed above, the GOK requests that the Court sustain Commerce's Final Remand Results pertaining to the GOK's alleged provision of electricity for LTAR.

Respectfully submitted,

/s/ Yujin K. McNamara
Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: February 20, 2026

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel hereby certifies that the forgoing brief complies with paragraph 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2,561 words including text, headings, footnotes, and quotations and excluding the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing software used to prepare this submission.

Respectfully submitted,

/s/ Yujin K. McNamara

Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: February 20, 2026