IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| POSCO,<br><br>        Plaintiff,<br><br>      and<br><br>GOVERNMENT OF THE REPUBLIC OF KOREA,<br><br>        Plaintiff-Intervenor,<br><br>      v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>      and<br><br>NUCOR CORPORATION,<br><br>        Defendant-Intervenor. | Before: Hon. Jane A. Restani, Judge<br><br>Court No. 24-00006 |

**DEFENDANT-INTERVENOR'S COMMENTS IN SUPPORT OF THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

                                                Alan H. Price, Esq.
                                                Christopher B. Weld, Esq.
                                                Adam M. Teslik, Esq.
                                                Paul A. Devamithran, Esq.

                                                WILEY REIN LLP
                                                2050 M Street, NW
                                                Washington, DC 20036
                                                (202) 719-7000

                                                *Counsel for Nucor Corporation*

Dated: February 20, 2026

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1
II. BACKGROUND .................................................................................................. 1
III. ARGUMENT ....................................................................................................... 3
    A. Commerce's Financial Contribution Determination Is Supported by Substantial Evidence and in Accordance with Law ................................. 3
    B. Commerce Reasonably and Lawfully Determined that Additional Free Permits Provided Through the K-ETS Program Are Specific ......... 6
IV. CONCLUSION .................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hyundai Steel Co. v. United States*,
 701 F. Supp. 3d 1398 (CIT 2024) ......................................................................... 2, 5

**Statutes**

19 U.S.C. § 1677(5)(D) ..................................................................................................... 4

19 U.S.C. § 1677(5)(D)(i) ............................................................................................. 2, 4

19 U.S.C. § 1677(5A) ....................................................................................................... 7

19 U.S.C. § 1677(5A)(A) and (B) .................................................................................... 3

19 U.S.C. § 1677(5A)(B) ................................................................................................. 7

19 U.S.C. § 1677(5A)(D)(ii) ............................................................................................ 2

**Administrative Materials**

*Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*,
 88 Fed. Reg. 86,318 (Dep't Commerce Dec. 13, 2023). ............................................ 1

*Forged Steel Fluid End Blocks from India*,
 85 Fed. Reg. 79,999 (Dep't Commerce Dec. 11, 2020) ............................................. 5

*Granular Polytetrafluoroethylene Resin From India*,
 87 Fed. Reg. 3,765 (Dep't Commerce Jan. 25, 2022) ................................................ 5

*Oil Country Tubular Goods From the Republic of Korea*,
 87 Fed. Reg. 59,056 (Dep't Commerce Sep. 29, 2022) .......................................... 6, 7

I. **INTRODUCTION**

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following comments in support of the December 9, 2025 remand redetermination issued by the U.S. Department of Commerce ("Commerce"). Redetermination Pursuant to Ct. Remand (Dec. 9, 2025), ECF No. 60, P.R.R. 9 ("Remand Redetermination"). Nucor opposes the agency's determination that the provision of electricity for less than adequate remuneration ("LTAR") is not de facto specific, and Nucor has already submitted timely comments to that effect. Def. Intervenor's Comments in Opp'n to the Final Results of Redetermination (Jan. 15, 2026), ECF No. 66. Nucor limits these comments to support for Commerce's Remand Redetermination with respect to the provision of K-ETS permits. Nucor respectfully submits that Commerce's determination concerning the K-ETS program is reasonable and otherwise in accordance with law and should be sustained.

II. **BACKGROUND**

In the final results at issue in this appeal, Commerce determined that the Korean government's provision of additional free allowances constituted a countervailable subsidy. Issues and Decision Memorandum accompanying *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 88 Fed. Reg. 86,318 (Dep't Commerce Dec. 13, 2023), P.R. 174 at 34 ("Final Results"). Commerce found that "in providing additional free emission allowances to entities within certain sectors, the GOK has relieved POSCO of the financial burden of meeting its emissions compliance obligations and provided a financial contribution in the form of revenue foregone." *Id*. And the agency determined a benefit to exist "to the extent that POSCO was relieved of the requirement to acquire additional allowances of KAUs in order to comply with the K-ETS program." *Id.* at 40. Commerce also found the provision of additional free KAU to certain sectors

1

to be *de jure* specific "because of the language in the AAGEP and implementing rules that expressly limited this allocation to certain industries as a matter of law." *Id.* at 45. The Court upheld Commerce's benefit finding but remanded Commerce's financial contribution and de jure specificity findings.

First, the Court held that Commerce's finding of financial contribution by means of revenue foregone was unlawful because the Government of Korea ("GOK") "must have failed to collect revenue from POSCO specifically," and "{i}t is not enough that Korea could have made more revenue from the entire group of regulated entities." *Posco v. United States*, Ct. No. 24-00006, Slip Op. 25-100 (Ct. Int'l Trade Aug. 8, 2025), ECF No. 51 at 13 ("Slip Op. 25-100"). The Court explained, however, that "{t}his is not to say that the extra permits are beyond the scope of countervailing duty law entirely." *Id.* at 13, n.8. The Court noted that the "permits are fungible financial instruments that have a recognized market value," and that the Court has previously "upheld Commerce's characterization of the permits as a direct transfer of funds under 19 U.S.C. § 1677(5)(D)(i)." *Id.* at 13, n.8 (citing *Hyundai Steel Co. v. United States*, 701 F. Supp. 3d 1398, 1403–06 (CIT 2024) (internal quotations omitted). Second, the Court held that a finding of *de jure* specificity was not warranted because the "existence of eligibility requirements is not enough on its own to create *de jure* specificity." *Id*. at 18. The Court also found that Commerce's determination that the K-ETS program criteria do not trigger the safe harbor provision of 19 U.S.C. § 1677(5A)(D)(ii), (whereby subsidies cannot be *de jure* specific if they have objective criteria for eligibility), was unsupported by substantial evidence because "the fact that not every industry is equally likely to meet a set of criteria does not mean that the criteria pick favorites." *Id*. at 19.

In Commerce's final remand redetermination, Commerce revised the basis of its finding of a financial contribution, determining that the "GOK provides a financial contribution in the form of

Ct. No. 24-00006

a direct transfer of funds" instead of in the form of revenue foregone. Remand Redetermination at 6. Commerce also revised the basis of its specificity finding, determining that the provision of additional permits meets the criteria for "a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions." *Id.* at 10 (citing 19 U.S.C. § 1677(5A)(A) and (B).

### III. ARGUMENT

#### A. Commerce's Financial Contribution Determination Is Supported by Substantial Evidence and in Accordance with Law

Consistent with the Court's instructions, in its Remand Redetermination, Commerce reevaluated its financial contribution finding and determined that the GOK provides a financial contribution in the form of a direct transfer of funds under section 771(5)(D)(i) of the Act, instead of as revenue foregone. Remand Redetermination at 16. Commerce correctly notes that "KAUs are an instrument used to pay for the emittance of GHGs," Remand Redetermination at 20, and that a KAU "unambiguously has a market value (and can readily be transferred for that value)." Remand Redetermination at 19. Commerce rightly concludes that the "GOK directly provides a financial instrument to POSCO that has a market value," Remand Redetermination at 24-25, which is a clear financial contribution. Commerce's revised financial contribution analysis is consistent with the record, the statute, and the agency's prior practice. Plaintiff's arguments to the contrary lack merit. Thus, the Court should sustain Commerce's financial contribution determination.

To start, Commerce properly characterized the financial contribution provided by the GOK through the provision of additional KAUs. Section 771(5)(D)(i) of the Act defines a countervailable "financial contribution" as including "the direct transfer of funds, such as grants, loans, and equity infusions, or the potential direct transfer of funds or liabilities, such as loan guarantees." 19 U.S.C. § 1677(5)(D). In the Remand Redetermination, Commerce made clear that it was treating the GOK's

3

allocation of extra KAUs as "a direct transfer of funds under section 771(5)(D)(i) of the Act." Remand Redetermination at 8.

As Plaintiff acknowledges, *see* Pl.'s Comments in Supp. of the Redetermination (Jan. 15, 2026), ECF No. 63 at 3 ("Pl. Comments"), the statute does not limit the types of subsidies that can be treated as a direct transfer of funds. *See* 19 U.S.C § 1677(5)(D)(i). "{G}rants, loans, and equity infusions" are listed as non-exhaustive examples of "direct transfer{s} of funds" under section 771(5)(D)(i) of the Act. Plaintiff implies that Commerce somehow exceeded its discretion by "creat{ing} new types of financial contributions that are inconsistent with the examples in the statute." Pl. Comments at 3. Commerce did nothing of the sort. In fact, Commerce recognized in its Remand Redetermination that the additional KAUs allotted by the GOK are not identical to traditional grants, loans, or equity infusions. Remand Redetermination at 17. Yet, Commerce found the extra KAUs to be analogous to the examples provided in the statute because they "constitute an instrument of monetary value that are fungible due to the creation of a public trading market" *Id.* at 7. Accordingly, given that "{t}he GOK creates a market value for permits … and the additional gratuitous allocation provided by the GOK therefore provides a transfer of an instrument of monetary value through its allocation," it was reasonable for Commerce to consider the provision of free KAUs to be a direct transfer of funds. *Id.* at 7-8.

Furthermore, Plaintiff fails to distinguish Commerce's financial contribution determination here from other proceedings where it has reached a similar conclusion. Pl. Comments at 7-8; Pl.-Intervenor's Comments in Supp. of the Redetermination (Jan. 15, 2026), ECF No. 64 at 5-6 ("Pl.-Intervenor Comments"). First, as noted above, the Court has sustained Commerce's finding of a financial contribution in the form of a direct transfer of funds for this exact program. *See* Remand

Order, 794 F.Supp.3d at Slip Op. 25-100 at 1413, n.8 (citing *Hyundai Steel Company*, 701 F.Supp.3d at 1403-06). The Court should sustain Commerce's identical finding here.

Second, as Commerce explained in its Remand Determination, Plaintiff ignores the fundamental similarity among other cases involving government transfers of an instrument of value to a recipient – allocations which Commerce treated as a direct transfer of funds. *See* Remand Redetermination at 21-22. For example, in the final determination of its CVD investigation on Granular Polytetrafluoroethylene Resin from India ("PTFE Resin from India"), Commerce treated a similarly designed renewable energy credit as "an instrument with monetary value," which it found to "constitute{} a financial contribution in the form of a direct transfer of funds." Issues and Decision Memorandum accompanying *Granular Polytetrafluoroethylene Resin From India*, 87 Fed. Reg. 3,765 (Dep't Commerce Jan. 25, 2022) (final affirm. countervailing duty deter. and final affirm. critical circumstances deter.) at 27. Further, in its final determination in the CVD investigation on Forged Steel Fluid End Blocks from India ("FEBs from India"), Commerce found that similar credits "have monetary value, even if the amount of that value may not be known at the time of bestowal," and that the provision of such credits "constitutes a financial contribution in the form of a direct transfer of funds." Issues and Decision Memorandum accompanying *Forged Steel Fluid End Blocks from India*, 85 Fed. Reg. 79,999 (Dep't Commerce Dec. 11, 2020) (final affirm. countervailing duty deter.) at 17-18. As Commerce acknowledged, the facts of these proceedings are not identical to the present case, but the underlying rationale of its determinations in PTFE Resin from India and FEBs from India are analogous here. Remand Redetermination at 8; 21-22. Plaintiff's claims to the contrary are unavailing. See Pl. Comments at 7-8; Pl.-Intervenor Comments at 5-6. The Court should therefore sustain Commerce's finding of a financial contribution, which is consistent with both the agency's practice and persuasive precedent from this Court.

**B.    Commerce Reasonably and Lawfully Determined that Additional Free Permits Provided Through the K-ETS Program Are Specific**

Consistent with the Court's instructions, in its Remand Determination, Commerce reevaluated its *de jure* finding under section 771(5A)(D)(i) and found instead that the provision of the additional 10 percent allocation by the GOK is specific under sections 771(5A)(A) and (B) of the Act, because it meets the criteria for an export subsidy, *i.e.*, "a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions." Remand Redetermination at 10. Commerce rightly noted that the GOK determines which subsectors receive the additional 10 percent gratuitous allocation of KAUs by multiplying two factors – the "international trade intensity" and "production cost incurrence rate." *See* Remand Redetermination at 10 (citing GOK Initial Questionnaire Response at 9 and Exhibit CEP-1). Commerce reasonably concluded that the provision of K-ETS permits is specific because "international trade intensity," *i.e.*, "export performance," is "1 of 2 or more conditions." Remand Redetermination at 11.

Plaintiff and Plaintiff-Intervenor object to Commerce's finding of specificity on these grounds, claiming that it is inconsistent with Commerce's prior finding in *Oil Country Tubular Goods from the Republic of Korea* that the K-ETS program was not an export subsidy. Pl. Comments at 8; Pl.-Intervenor Comments at 14-17 (citing Issues and Decision Memorandum accompanying *Oil Country Tubular Goods From the Republic of Korea*, 87 Fed. Reg. 59,056 (Dep't Commerce Sep. 29, 2022) (final affirm. countervailing duty deter.) at 35-36 ("*OCTG from Korea*"). But the Plaintiffs ignore or mischaracterize a key distinction between the version of the K-ETS program Commerce analyzed in *OCTG from Korea* and the version under review here. Specifically, as Commerce explained in its Remand Redetermination, in *OCTG from Korea* Commerce was analyzing Phase II of the K-ETS program, wherein there were two independent criteria for qualifying for the additional allocation of KAUs. Remand Redetermination at 25. The

version of the K-ETS program under review in this case is in Phase III, wherein the two criteria for qualifying for the additional allocation are a factor pair, *i.e.*, they are no longer independent. *Id*. Thus, with the exception of five industries which are eligible for an additional allocation pursuant to GOK presidential decree, Remand Redetermination at 27, all other subsectors – including steelmakers like POSCO – qualify for the additional allocation on the basis of exports and one or more other factors. *Id*.

Plaintiff-Intervenor also makes the dubious claim that Commerce cannot base its export subsidy determination on "an industry or group of industries" because 19 U.S.C. § 1677(5A)(B), pertaining to export subsidies, does not include the words "enterprise" or "industry" such that the blanket guidance in 19 U.S.C. § 1677(5A) permitting grouping in the context of Commerce's specificity analysis is triggered. Pl.-Intervenor Comments at 17. This reading is nonsensical. The statute defines export subsidies as a "subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions." 19 U.S.C. § 1677(5A)(B). This begs an obvious question: export performance of whom if not an enterprise or industry? The statute permits grouping of enterprises or industries "{f}or the purposes of this paragraph," and export subsidies are in the paragraph. *See* 19 U.S.C. § 1677(5A). Commerce's evaluation of subsectors qualifying for the additional allocation was therefore lawful, and for the reasons above, an analysis of the relevant group of subsectors reveals that they receive an export subsidy that is *de jure* specific.

## IV. <u>CONCLUSION</u>

For the reasons discussed herein, Nucor respectfully requests that the Count find that Commerce's Remand Redetermination with respect to the agency's findings of financial

contribution and *de jure* specificity for the K-ETS subsidy program are supported by substantial evidence and otherwise in accordance with law.

                                                                             Respectfully submitted,

                                                                             */s/ Alan H. Price*
                                                                             Alan H. Price, Esq.
                                                                             Christopher B. Weld, Esq.
                                                                             Adam M. Teslik, Esq.
                                                                             Paul A. Devamithran, Esq.

                                                                             **WILEY REIN LLP**
                                                                             2050 M Street, NW
                                                                             Washington, DC 20036
                                                                             (202) 719-7000

                                                                             *Counsel for Nucor Corporation*

Dated: February 20, 2026

Ct. No. 24-00006

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 2,200 words.

    */s/ Alan H. Price*
(Signature of Attorney)

    Alan H. Price
(Name of Attorney)

    Nucor Corporation
(Representative Of)

    February 20, 2026
(Date)

9

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 2,200 words.

    */s/ Alan H. Price*
(Signature of Attorney)

    Alan H. Price
(Name of Attorney)

    Nucor Corporation
(Representative Of)

    February 20, 2026
(Date)