**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JANE A. RESTANI**

POSCO,

Plaintiff,

and

GOVERNMENT OF THE REPUBLIC OF KOREA,

Plaintiff-Intervenor,

v.

UNITED STATES,

Defendant,

and

NUCOR CORPORATION,

Defendant-Intervenor.

**Court No. 24-00006**

**PUBLIC**

**PLAINTIFF-INTERVENOR GOVERNMENT OF THE REPUBLIC OF KOREA'S COMMENTS IN OBJECTION OF THE SECOND FINAL RESULTS OF REDETERMINATION**

Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: August 21, 2026

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i

**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**ARGUMENT** .......... 1

**CONCLUSION** .......... 7

# TABLE OF AUTHORITIES

## CASES

*Gov't of Québec v. United States*, 105 F.4th 1359 (Fed. Cir. 2024) .......... 2, 3

*Gov't of Sri Lanka v. United States*, 308 F. Supp. 3d 1373 (Ct. Int'l Trade 2018) .......... 4

*Hyundai Steel Co. v. United States*, 803 F. Supp. 3d 1252 (Ct. Int'l Trade 2025) .......... 3

*Hyundai Steel Co. v. United States*, No. 23-00211, 2026 WL 1558544 (Ct. Int'l Trade May 18, 2026) .......... 4

*Mosaic Co. v. United States*, 659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) .......... 5

## STATUTES

19 U.S.C. § 1677(5)(B) .......... 1

**INTRODUCTION**

In its opinion, the Court rejected Commerce's determination that the GOK's provision of additional 10 percent Korean Allowance Units ("KAUs") is specific under section 771(5A)(A) and (B) of the Act on the basis that it constitutes an export subsidy. Court Op. and Order, ECF No. 76 ("Court Op.") at 13-17. The Court instead directed Commerce, on remand, to conduct a proper *de facto* specificity analysis. Court Op. at 17. In its Final Results of Redetermination Pursuant to Second Court Remand, ECF No. 79-1 ("Second Final Remand Redetermination"), Commerce concluded that because the number of entities receiving the additional KAUs was limited, the K-ETS program is specific under section 771(5A)(D)(iii)(I) of the Act. Second Final Remand Redetermination at 5. Because Commerce's new basis for finding *de facto* specificity in its Second Final Remand Redetermination continues to be unsupported by substantial evidence or otherwise not in accordance with the law, the Court should again reject Commerce's specificity finding.

**ARGUMENT**

In its Second Final Remand Redetermination, Commerce concluded that the GOK's provision of additional KAUs was *de facto* specific because the recipients of the additional KAUs were limited in number. Second Final Remand Redetermination at 5-8. To reach this conclusion, Commerce compared the number of companies that received the additional 10 percent allocation of KAUs to the total number of companies operating in the Korean economy in 2021. *Id.* at 6. This apples-to-oranges comparison, however, is unreasonable because the denominator of the comparator bears no meaningful relationship to the program at issue.

The GOK reiterates that the K-ETS program is a regulatory compliance regime that imposes an obligation on companies to reduce their greenhouse gas emissions ("GHG"). It is not a subsidy as defined by the statute. *See* 19 U.S.C. § 1677(5)(B). The record clearly establishes

that only companies meeting specific emission thresholds are subject to the K-ETS program. Specifically, the program applies to entities that have emitted 125,000 or more tCO2-eq or have sites with annual average GHG emissions of 25,000 or more tCO2-eq during three preceding years. Appx87202. These covered entities are required to internalize the costs of their emissions and must obtain and surrender KAUs to comply with the stringent requirements of the K-ETS program. By contrast, entities falling below the applicable thresholds do not receive any KAUs, whether through the standard 90 percent allocation or the additional 10 percent allocation, because they are not participants in the K-ETS program and do they bear any of the regulatory obligations imposed by the K-ETS program.

Against this backdrop, Commerce's comparison of K-ETS participants receiving the additional allocation to all companies operating in Korea is fundamentally flawed. The overwhelming majority of Korean companies are not subject to the K-ETS program and therefore fall entirely outside the universe of entities that could receive ***any*** KAUs. By using all Korean companies as the denominator, Commerce distorted the specificity analysis, rendering the resulting comparison meaningless. The proper comparison is the universe of covered entities eligible to receive KAUs under the K-ETS program, not all companies operating in Korea regardless of their participation in, or eligibility for, the program.

Commerce's reliance on *Gov't of Québec v. United States* is misplaced. *See* Second Final Remand Redetermination at 7 and 10. In *Gov't of Québec*, the Federal Circuit upheld Commerce's comparison between recipients of a tax credit and the total number of tax filers because all such filers—both corporations and individuals—were eligible to claim the credit if they satisfied the statutory criteria. *Gov't of Québec v. United States*, 105 F.4th 1359, 1374 (Fed. Cir. 2024). The court specifically noted that "{b}oth corporations and individuals ***engaging in***

***business activities*** can avail themselves of this {tax credit} program." *Id.* (emphasis added). Thus, the denominator—all 387,949 corporate entities—reflected the full universe of potential recipients. *Id.*

The present case is different. Most of the 906,325 companies included in Commerce's denominator were not subject to the K-ETS program and therefore could not have received additional KAUs. Unlike the comparison upheld in *Gov't of Québec*, Commerce's numerator and denominator do not represent a common universe of potential recipients. To make the comparison analogous to *Gov't of Québec*, Commerce would have needed to compare the number of companies receiving the additional KAUs to the number of companies subject to the K-ETS program. Instead, Commerce compared recipients of the additional allocation to the entire Korean corporate population, the vast majority of which is wholly outside the K-ETS framework.

Commerce's reliance on *Hyundai Steel Co. v. United States* is likewise misplaced. *See* Second Final Remand Redetermination at 7-8 and 11-12. In *Hyundai Steel*, the court concluded that the number of companies receiving the additional KAUs was limited when compared to the number of companies operating in Korea. *Hyundai Steel Co. v. United States*, 803 F. Supp. 3d 1252, 1256-58 (Ct. Int'l Trade 2025). The court rejected Hyundai Steel's argument that Commerce had selected an improper comparator, reasoning that the specificity analysis should not serve as "'a loophole through which' subsidies 'used by discrete segments of an economy' (such as the K-ETS) may elude countervailability" and that the fact that most companies operating in Korea are not subject to the K-ETS program does not, by itself, serve as "a basis for finding the subsidy non-specific." *Id.* at 1257.

Respectfully, the court's analysis in *Hyundai Steel* misconstrues the nature of the K-ETS program. As explained above, the K-ETS program is **not** a subsidy used by a discrete segment of the economy. Rather, it is a regulatory regime that imposes compliance obligations on companies whose emissions exceed specified thresholds. Covered entities must internalize the costs associated with their GHG emissions and surrender KAUs to satisfy those obligations. Because the K-ETS program itself cannot be considered a subsidy, the relevant inquiry is not whether all companies operating in Korea are subject to the K-ETS program.

Nor does the GOK contend that the K-ETS program is non-specific merely because many Korean companies fall outside the program. Rather, the GOK's position is that Commerce employed an unreasonable comparator by measuring recipients of the additional 10 percent allocation against all companies operating in Korea, including companies that are neither subject to nor eligible to participate in the K-ETS program. When the relevant universe is properly defined, the record demonstrates that the additional 10 percent allocation was distributed broadly among companies covered by the K-ETS program. Because a substantial majority of K-ETS participants received the additional allocation, the provision of those KAUs cannot reasonably be characterized as *de facto* specific.

Although the statute affords Commerce discretion in selecting comparators for its *de facto* specificity analysis, that discretion is not without limits. Courts have made clear that Commerce must articulate a reasoned explanation demonstrating why its chosen comparator is appropriate in the context of specific factual circumstances. *Hyundai Steel Co. v. United States*, No. 23-00211, 2026 WL 1558544 (Ct. Int'l Trade May 18, 2026) at *18. This Court has also cautioned against analyzing a component of a program "in isolation from the overall" program. *Gov't of Sri Lanka v. United States*, 308 F. Supp. 3d 1373, 1380 (Ct. Int'l Trade 2018). Here,

Commerce failed to explain why comparing K-ETS participants to the entire Korean economy, most of which have no connection to the K-ETS program, is a meaningful measure of limitation.

This case instead closely resembles *Mosaic Co. v. United States*, where this Court rejected a similarly flawed specificity analysis. There, Commerce compared recipients of tax penalty relief to all corporate taxpayers, even though only taxpayers that had incurred penalties could potentially receive relief. *Mosaic Co. v. United States*, 659 F. Supp. 3d 1285, 1314-15 (Ct. Int'l Trade 2023). The court found Commerce's comparison "meaningless" because the numerator and denominator were not logically comparable. The same defect exists here. Only K-ETS participants receive the additional 10 percent of KAUs, yet Commerce compared them to the entire corporate population. Like in *Mosaic*, the program at issue is intended to relieve or reduce a burden that is placed on only a subset of the corporation population. And like in *Mosaic*, comparing the number of companies that received relief from the burden to a denominator that includes companies that were exempted from the burden in the first place does not make sense.

Moreover, as the tax penalties in *Mosaic*, the K-ETS program overall creates a regulatory burden on the entities subject to the program in order to limit GHG emissions. Appx87190-87192. The additional 10 percent allocation of KAUs has the effect of reducing the regulatory burden for the entities receiving the additional KAUs, but they still remain subject to the K-ETS program. Yet, even if the additional allocation *completely* eliminated a participant's compliance costs of the K-ETS program, that participant would merely be placed on even footing with the hundreds of thousands of entities that are not subject to the K-ETS program at all. Commerce's analysis, which compares the number of companies that received additional KAUs to the total number of companies in Korea fails to acknowledge that the hundreds of thousands of companies

that are not subject to the K-ETS *already* were exempted from the compliance costs of the K-ETS program.

On remand, Commerce dismissed this argument asserting that the GOK conflated "Commerce's specificity analysis with the separate and distinct benefit analysis." Second Final Remand Redetermination at 17. Commerce missed the point. This is unrelated to a benefit analysis. Rather, the fact that these companies are exempt from the underlying regulatory burden is precisely what makes them unsuitable comparators under *Mosaic*. Just as the taxpayers that never incurred penalties could not meaningfully be included in the denominator for measuring the specificity of the tax penalty relief, companies that are not subject to the burden under the K-ETS program cannot meaningfully be included in the denominator for measuring the prevalence of relief from K-ETS compliance costs. The significance of the underlying K-ETS burden is not that it establishes the magnitude of any benefit. Instead, it demonstrates why Commerce's denominator is fundamentally flawed. Because the additional allocation of KAUs functions only within the subset of companies subject to the K-ETS, Commerce cannot meaningfully assess specificity by comparing recipients to companies that neither participate in the program nor bear its compliance obligations. That is the same analytical error this Court rejected in *Mosaic*. For the same reason, companies exempted from the burdens of the K-ETS program should be treated as part of the numerator of the companies whose compliance costs have been reduced or eliminated in relation to the K-ETS program, or because the program is irrelevant to them, they should be removed from the analysis altogether.

Finally, on remand, Commerce stated that it "reviewed existing record information detailing the number of companies that received the ***additional*** 10 percent allocation of KAUs." Second Final Remand Redetermination at 6 (emphasis added). If Commerce's specificity

analysis is intended to measure whether the ***additional*** 10 percent allocation was limited, then the appropriate comparator is the universe of companies subject to the K-ETS program, namely, those eligible to receive either the standard 90 percent allocation or the 100 percent allocation. That group represents the relevant universe from which any alleged "limitation" must be assessed.

Under this proper framework, the evidence does not support a finding that the recipients of the additional allocation were limited in number. The record shows that, in 2021, 684 companies were subject to the K-ETS program. Appx86978. Of those companies, 494 received the full 100 percent allocation. *Id.* Moreover, recipients of the additional allocation spanned numerous industry subsectors, demonstrating that the allocation was not targeted to a narrow group but rather broadly available across entities and industries subject to the K-ETS program. *See* Appx88994-88999. Both the proportion of recipients and the breadth of these industry distributions demonstrate that the additional 10 percent allocation was provided to a substantial share of the relevant universe of eligible companies.

In sum, Commerce's *de facto* specificity finding in the Second Final Remand Redetermination is unsupported by substantial evidence and contrary to law.

**CONCLUSION**

For the reasons discussed above, the GOK requests that the Court reject Commerce's Second Final Remand Redetermination and remand again for Commerce to reach the only

decision supported by the law and the record, which is that the alleged provision of additional KAUs is not *de facto* specific.

Respectfully submitted,

/s/ Yujin K. McNamara
Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: August 21, 2026

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel hereby certifies that the forgoing brief complies with paragraph 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2,041 words including text, headings, footnotes, and quotations and excluding the table of contents, table of authorities, and counsel's signature block, according to the word count function of the word-processing software used to prepare this submission.

Respectfully submitted,

/s/ Yujin K. McNamara
Yujin K. McNamara
Devin S. Sikes
Daniel M. Witkowski
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 887-4347
E-mail: ymcnamara@akingump.com
*Counsel for the Government of the Republic of Korea*

Dated: August 21, 2026