**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **POSCO,**<br>**Plaintiff,**<br>**and**<br>**GOVERNMENT OF THE REPUBLIC OF KOREA,**<br>**Plaintiff-Intervenor,**<br>**v.**<br>**UNITED STATES,**<br>**Defendant,**<br>**and**<br>**NUCOR CORPORATION,**<br>**Defendant-Intervenor.** | **Before: Hon. Jane A. Restani, Judge**<br><br>**Court No. 24-00006** |

**DEFENDANT-INTERVENOR'S COMMENTS IN SUPPORT OF THE FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

**Alan H. Price, Esq.**
**Christopher B. Weld, Esq.**
**Adam M. Teslik, Esq.**
**Paul A. Devamithran, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel for Nucor Corporation***

**Dated: October 5, 2026**

**Ct. No. 24-00006**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................ 1
II. ARGUMENT ........................................ 1
III. CONCLUSION ........................................ 7

**Ct. No. 24-00006**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gov't of Quebec v. United States*,
105 F.4th 1359 (Fed. Cir. 2024) ........ *passim*

*Hyundai Steel Co. v. United States*,
803 F.Supp. 3d 1252 (Ct. Int'l Trade 2025) ........ 2, 3, 5

*Mosaic Co. v. United States*,
659 F. Supp. 3d 1285 (Ct. Int'l Trade 2023) ........ 5, 6

*POSCO v. United States*,
No. 24-00006, slip op. 26-36 (Ct. Int'l Trade Apr. 17, 2026) ........ 1, 2

*Royal Thai Gov't v. United States*,
436 F.3d 1330 (Fed. Cir. 2006) ........ 6

**Ct. No. 24-00006**

## I. INTRODUCTION

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we hereby submit the following comments in support of the July 22, 2026 remand redetermination issued by the U.S. Department of Commerce ("Commerce"). Redetermination Pursuant to Ct. Remand (July 22, 2026), ECF No. 79, P.R.R. 1 ("Second Remand Redetermination"). Commerce continues to properly find that the Government of Korea's ("GOK") provision of additional emissions allowances ("KAUs") to certain participants in the Korea Emissions Trading System ("KETS") constitutes a countervailable subsidy. Namely, Commerce correctly determines that the GOK's provision of KAUs under the KETS program constitutes a *de facto* specific subsidy. In this regard, the Remand Determination is consistent with the Court's April 17, 2026 opinion. *POSCO v. United States*, No. 24-00006, slip op. 26-36 (Ct. Int'l Trade Apr. 17, 2026), ECF No. 76 ("Slip Op. 26-36"). Therefore, the Court should reject arguments to the contrary made by Plaintiff POSCO Co., Ltd. ("Plaintiff" or "POSCO") and Plaintiff-Intervenor the Government of Korea ("Plaintiff-Intervenor" or "GOK") (collectively "Plaintiffs") in their comments in opposition to the Remand Determination, Pl.'s Cmts. in Opp'n to the Remand Results (Aug. 21, 2026), ECF No. 82 ("POSCO Opp. Cmts."), Pl. Intervenor's Cmts. in Opp'n to the Remand Results (Aug. 21, 2026), ECF No. 81 ("GOK Opp. Cmts.") and the Court should sustain Commerce's determination as it is supported by substantial evidence and in accordance with law.

## II. ARGUMENT

Commerce has properly revisited its specificity determination regarding the GOK's provision of additional KAUs to certain industries and companies under the KETS program, and the agency has appropriately found that the KETS program is *de facto* specific. Consistent with the Court's opinion, Commerce is no longer relying on a finding of *de jure* specificity – but rather

one of *de facto* specificity – in determining that the KETS program provides countervailable subsidies. *See* Second Remand Determination at 5-8; Slip Op. 26-36 at 9-17. Commerce's *de facto* specificity analysis is supported by record evidence in this proceeding and by recent court precedent affirming the agency's ability to reach a *de facto* specificity determination in similar circumstances. *See* Second Remand Determination at 6-8. Indeed, as addressed further below, Commerce's *de facto* specificity analysis in this proceeding follows the very framework recently endorsed by the U.S. Court of Appeals for the Federal Circuit ("CAFC"), *see Gov't of Quebec v. United States*, 105 F.4th 1359, 1373-75 (Fed. Cir. 2024) ("*Quebec*"). In addition, this court has recently upheld Commerce's *de facto* specify finding for the exact same GOK program in another steel case. *See Hyundai Steel Co. v. United States*, 803 F.Supp. 3d 1252, 1256-58 (Ct. Int'l Trade 2025) ("*Hyundai Steel*"). The GOK's attempts to distinguish *Quebec* and discredit *Hyundai Steel* are unavailing. Rather, Commerce's revised specificity analysis is supported by the record, the statute, and prior cases. Thus, the Court should sustain Commerce's *de facto* specificity determination.

To start, Commerce's *de facto* specificity analysis in the Second Remand Determination adheres to the approach affirmed recently by the CAFC in *Quebec*. As the agency notes in the Second Remand Determination, in *Quebec*, the CAFC "affirmed Commerce's practice of finding *de facto* specificity where the recipients of the subsidy are limited in number." Second Remand Determination at 7; see also *Quebec*, 105 F.4th at 1373-75. Commerce further explained that in the administrative proceeding underlying *Quebec*, the agency had "found, and the Federal Circuit upheld, 4,930 tax credit recipients of 387,949 total corporate tax filers to be *de facto* specific given that the recipients were limited in number." Second Remand Determination at 7. Commerce then compared that finding to the even more limited number of subsidy recipients in this case, where

494 Korean companies received additional KAUs under the KETS program out of 906,325 companies operating in the GOK's jurisdiction. *See id.* at 10. Commerce also pointed to other instances where this Court has upheld the agency's *de facto* specificity analysis, including this Court's recent decision in *Hyundai Steel*. *Id.* at 7 n.32. Put simply, Commerce's approach to assessing the limited number of recipients of KAUs under the KETS program is entirely consistent with the framework endorsed by this Court and the CAFC.

Commerce's analogy to the CAFC's *Quebec* decision is appropriate and supports its *de facto* specificity determination here in several respects. First, the total number of Korean recipients of additional KAUs in this case (*i.e.*, 494) is lower than the number of Canadian on-the-job training credit recipients in *Quebec* (*i.e.*, 4,930). *See* Second Remand Determination at 7, 10; *Quebec*, 105 F.4th at 1374. Second, the percentage of Korean subsidy recipients (*i.e.*, 0.05%) is significantly lower than the percentage of Canadian subsidy recipients (*i.e.*, 1.27%) in *Quebec*. *See* Second Remand Determination at 7, 10; *Quebec*, 105 F.4th at 1374. That is, by both measures, the GOK's provision of additional KAUs through the KETS program is more limited than the on-the-job training credits provided by Government of Quebec. Therefore, Commerce's finding of *de facto* specificity here, where the subsidy recipients are even more limited in number, is fully supported by the CAFC's recent decision in *Quebec*.

Additionally, the nature of the subsidies and the comparison between recipients and potential recipients is analogous between the two cases. *See* Second Remand Determination at 7-8; *Quebec*, 105 F.4th at 1374-75. In *Quebec*, the CAFC endorsed Commerce's comparison of the number of companies receiving the on-the-job training credit against the total number of tax filers over the same period. *See Quebec*, 105 F.4th at 1374. In other words, the court did not require Commerce to only compare the number of credit recipients against the number of companies that

were shown to have actually done on-the-job training during that period. *See id*. Rather, the court found that, "{g}iven the nature of the program, the limited number of recipients (about 1.27% of corporate entities) . . . the on-the-job credit is not one of widespread availability and use throughout the economy." *Id*. at 1375. Likewise, here, Commerce appropriately compares the number of Korean companies receiving additional KAUs against the total number of companies under the GOK's jurisdiction. *See* Second Remand Determination at 7-8. That comparison similarly shows that the companies receiving additional KAUs through the KETS program are limited, representing only 0.05% of eligible companies, which demonstrates that the subsidy is not widely available throughout Korea.

Plaintiff's attempt to distinguish the facts of this proceeding from *Quebec* are unavailing, as Commerce has found. *See id*. at 17-18; GOK Opp. Cmts. at 2-3; POSCO Opp. Cmts. at 2-3. For example, the GOK argues that Commerce's "comparison of recipients of a tax credit and the total number of tax filers" in *Quebec* was appropriate "because all such filers—both corporations and individuals—were eligible to claim the credit if they satisfied the statutory criteria." GOK Opp. Cmts. at 2. Here, Plaintiffs argue, Commerce's comparison is inappropriate because it is between users of the K-ETS program and all other companies under the GOK's jurisdiction, including those that do not use the K-ETS program. But as noted above, the CAFC did not require Commerce to only compare the number of credit recipients against the number of companies that were shown to have actually done on-the-job training during that period. *See Quebec*, 105 F.4th at 1374. Indeed, as Commerce notes in its Remand Redetermination,

> {n}either Commerce not the Federal Circuit {in *Quebec*} suggested that the number of recipients must be compared to a set of only "qualified businesses" and those with "the required certification" in conducting the *de facto* specificity analysis. Rather the specificity analysis was based on a comparison of recipients to the full universe of taxpayers. To equate eligibility for a subsidy to the universe that can be

> considered for limited in number specificity would undermine the SAA's clear instructions to consider subsidization "through an economy."

Second Remand Redetermination at 16-17 (emphasis added). Similarly, as this Court explained in response to plaintiffs' attempts to distinguish the K-ETS program from the program in *Quebec*, these arguments are

> unpersuasive and in conflict with the purpose of the specificity test. . . . {Plaintiff's} reliance on the fact that not all companies operating in the economy are subject to the K-ETS only supports Commerce's finding that the benefit of the full allocation is, likewise, not "widely available." As set forth above, the specificity test is not "a loophole through which" subsidies "used by discrete segments of an economy" (such as K-ETS) may elude countervailability. Moreover, there is no requirement that recipients of the benefit of the full allocation share some other characteristic, such as participation in the K-ETS, with the group comprising the denominator: "the fact that users may be limited due to the inherent characteristics of what is being offered" is not "a basis for finding the subsidy non-specific." *CVD Preamble*, at 63 Fed. Reg. at 65,359.

*Hyundai Steel Co. v. United States*, Court No. 22-00170, slip op. 25-124 (Ct. Int'l Trade Sep. 22, 2025), ECF No. 75 at 8-9 (emphasis added). In actuality, contrary to plaintiffs' claims in this and other cases, the facts surrounding the GOK's K-ETS program are strikingly similar to those in *Quebec* and, as illustrated above, are even more supportive of Commerce's finding that the subsidy was provided to a limited number of recipients. Plaintiffs ignore the similarities between *Quebec* and the present case, which Commerce has appropriately relied on to support its determination here.

Moreover, Plaintiff repeatedly and erroneously analogizes to a decision from this Court, *Mosaic Co. v. United States*, 659 F. Supp. 3d 1285, 1314-17 (Ct. Int'l Trade 2023), which has been effectively superseded by the CAFC's decision in *Quebec*. *See* GOK Opp. Cmts at 5-6. As Commerce reasoned in the Second Remand Determination, Plaintiff's attempted analogy is not persuasive. *See* Second Remand Determination at 14-16. Indeed, in *Quebec*, the CAFC found the appellants reliance on *Mosaic* to be "unpersuasive," finding the facts to be distinguishable.

*Quebec*, 105 F.4th at 1375 n.10. Notably, the proceeding underlying *Mosaic* concerned corporate taxpayers who received tax penalty relief, and the Court found it more appropriate to compare the relief recipients against the number of companies paying tax penalties. *See Mosaic*, 659 F. Supp. 3d at 1314-17. This case concerns an entirely different program, which Commerce has properly determined is best assessed as a comparison of additional KAU recipients against all companies operating in the GOK's jurisdiction. *See* Second Remand Determination at 9-11. Further, as Commerce explained in the Remand Determination, the number of Korean recipients here (*i.e.*, 494) is a small fraction of the number of Moroccan subsidy recipients at issue in *Mosaic* (*i.e.*, 8,761). *Id*. at 15.

As a final matter, Commerce correctly notes that a distinguishing fact of this proceeding is that the number of Korean subsidy recipients (*i.e.*, 494) is very low in comparison to the size of the Korean economy. *Id*. at 6-7. This led the agency to conclude that "a program which has only 494 company recipients in an economy the size of Korea cannot be considered 'widely used' throughout the economy within the spirit of the specificity test as outlined in the {Statement of Administrative Action}." *Id*. at 6. That is a critical factual determination that distinguishes this case from any case that Plaintiff identifies. *See* GOK Opp. Cmts. at 2-7. As the CAFC outlined in *Quebec*, Commerce's *de facto* specificity analysis is a "fact-intensive and case-specific inquiry, where the factors involved and the weight accorded to them vary from case to case." *Quebec*, 105 F.4th at 1374 (citing *Royal Thai Gov't v. United States*, 436 F.3d 1330, 1335-36 (Fed. Cir. 2006)). Therefore, as the CAFC did in *Quebec*, the Court should allow Commerce to "exercise{} the necessary latitude afforded it in choosing the appropriate approach" to conduct its *de facto* specificity analysis. *Quebec*, 105 F.4th at 1374.

## III. CONCLUSION

For the reasons discussed herein, For the reasons above, Defendant-Intervenor respectfully requests that the Court reject the arguments raised by the Plaintiffs and sustain Commerce's finding of *de facto* specificity in the Second Remand Determination and its decision to continue to countervail the subsidies received by POSCO from the provision of additional KAUs by the GOK through the KETS program.

Respectfully submitted,

*/s/ Alan H. Price*

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Adam M. Teslik, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Dated: October 5, 2026

**Ct. No. 24-00006**

CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor's Comments in Support of the Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 2,010 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

October 5, 2026
(Date)